IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHYAM CHETAL,

    Plaintiff,

v.

AMERICAN HOME MORTGAGE,

    Defendant.

No. C 09-02727 CRB

**ORDER DENYING PRELIMINARY INJUNCTION**

Plaintiff Shyam Chetal, a homeowner who has defaulted on his mortgage, seeks a preliminary injunction against Defendants American Home Mortgage Servicing, Inc. ("AHMSI"), American Brokers Conduit ("ABC"), and Amex Mortgage and Investments to enjoin the sale of Plaintiff's house. Though Plaintiff undoubtedly faces irreparable harm, his legal claim lacks merit; therefore the Court DENIES the preliminary injunction.

## BACKGROUND

On June 26, 2006, Plaintiff entered into a closed-end consumer credit transaction with Defendant ABC[1] to refinance the loan on his home. Mot. at 4. On March 6, 2009, Defendants recorded a Notice of Default and Election to Sell Under Deed of Trust. Opp. at 1; RJN, Ex. 2. Plaintiff attempted to rescind the loan on June 2, 2009 – just short of three years after entering into it– by sending a letter to Defendant AHMSI. Mot. at 7; Haubrich

---

[1] Defendant ABC sold Plaintiff's loan to Defendant AHMSI. Mot. at 7. Defendant notes that AHMSI immediately assigned the instruments to CITIBANK, N.A. as trustee for American Home Mortgage Assets. Opp. at 1; RJN, Ex. 4.

1  Decl. Ex. A.  Plaintiff subsequently received a Notice of Trustee Sale setting his home for
2  foreclosure on June 29, 2009 at 12:00 P.M.  Mot. at 7.  Plaintiff brought suit against
3  Defendants and filed an application for a temporary restraining order on June 19, 2009.  Id.
4       Before the Court could act on Plaintiff's application, the parties stipulated to a
5  temporary restraining order to enjoin the sale of Plaintiff's house until August 7, 2009, so
6  that a motion for a preliminary injunction could be heard.  See Joint Stip 6/25/09.  The
7  parties subsequently entered into a second stipulation, moving the hearing on Plaintiff's
8  application for a preliminary injunction from August 7, 2009 to August 21, 2009 "so that the
9  Parties may attempt an informal resolution that could possibly dispose of the entire case."
10  Stip 7/17/09.  The parties failed to settle the case, and briefing on the motion for preliminary
11  injunction continued in anticipation of the August 21, 2009 hearing.

## DISCUSSION

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  The Ninth Circuit has two sets of criteria for determining whether preliminary relief should be granted.  Taylor v. Westly, 488 F.3d 1197, 1200 (9th Cir. 2007) (citing Ranchers Cattleman Action Legal Fund v. U.S. Dep't of Agric., 415 F.3d 1078, 1092-93 (9th Cir. 2005)).  Traditionally, a plaintiff was required to show (1) a strong likelihood of success on the merits; (2) possible irreparable injury if preliminary relief is denied; (3) that a balance of hardships favors plaintiff; and (4) the advancement of public interest.  Id.  Under the alternative test, a plaintiff must demonstrate both probable success on the merits and possible irreparable injury, or that serious questions are raised and that the balance of hardships tips sharply in the plaintiff's favor.  Id.  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum."  Id.

    1.    <u>Irreparable Harm/Public Interest/Balance of Hardships</u>

There is no question that Plaintiff risks irreparable injury if the foreclosure sale goes forward: Plaintiff would lose his house, and with his house, the right to rescind his mortgage. See Cottonwood Christian Ctr. v. Cypress Redevelopment Agency, 218 F. Supp. 2d 1203, 1230 (C.D. Cal. 2002) ("every piece of property is unique and thus damages are an insufficient remedy to the denial of property rights"); Edejer v. DHI Mortgage Co., 2009 WL 1684714 *5 (N.D. Cal. 2009) ("right of rescission terminated upon sale of the property"). The public interest also favors preventing individuals from losing their homes based on unconscionable loan agreements. Along the same lines, the balance of hardships tips sharply in Plaintiff's favor: he stands to forever lose his home, whereas if an injunction were granted, Defendants would only be delayed in earning income from an investment.

2. Success on the Merits/Serious Questions

The question, whether framed as if Plaintiff is likely to succeed on the merits or if Plaintiff has raised serious questions, is the strength of Plaintiff's legal claim. Plaintiff asserts three causes of action: (1) two separate violations of the Truth in Lending Act ("TILA"), which he claims give him a right to rescind his loan; (2) a violation of California's Unfair Competition Law ("UCL"); and (3) "Preliminary/Permanent Injunction." Complaint at ¶¶ 16-32. This Order will address the strength each cause of action in turn.

A. TILA Cause of Action– Notice of Right to Cancel

First, Plaintiff alleges that, in contravention of TILA and Regulation Z, he was given a Notice of Right to Cancel which was "silent as to the transaction date and the last date to cancel." Mot. at 6. Plaintiff attached to his declaration a copy of the Notice of Right to Cancel he claims he received; the places where dates are to be filled in are blank, and it is unsigned. Chetal Decl. Ex. B. Plaintiff also alleges that he only received one copy of the Notice of the Right to Cancel. Mot. at 6.

It would indeed be significant if Plaintiff received only one blank copy of the Notice of the Right to Cancel. Regulation Z requires that creditors provide "two copies of the notice of the right to rescind," and that such notice "clearly and conspicuously disclose," among other things, "the date the rescission period expires." 12 C.F.R. § 226.23(b)(1). Even

3

1  "technical or minor violations," including the failure to fill out the expiration date on a
2  rescission form, violate TILA. Semar v. Platte Valley Federal Sav. & Loan Ass'n, 791 F.2d
3  699, 704 (9th Cir. 1986) (citing Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65,
4  67 (4th Cir. 1983)). Such a violation gives the consumer three years– and not the usual three
5  days– in which to rescind his loan. Id. at 701-02; 15 U.S.C. § 1635(f).

6  However, Defendant AHMSI attached to a declaration in support of its Opposition three
7  Notices of Right to Cancel– each with the dates filled in, and each with Plaintiff's signature below
8  the line: "The undersigned . . . acknowledge[s] receipt of two copies of NOTICE of RIGHT TO
9  CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement." Stevens Decl. Ex.
10  A. At the motion hearing, Plaintiff did not dispute the authenticity of these Notices, but maintained
11  that Plaintiff did not receive two copies of the Notice. Plaintiff also asserted in his reply brief that
12  "there exists a disputed issue [of] material fact as to whether Plaintiff was provided with a properly
13  executed Right to Cancel" – and that therefore a preliminary injunction is necessary pending the
14  resolution of the disputed fact. Reply at 6. But this is not a motion for summary judgment. Plaintiff
15  has the burden of persuasion. See Mazurek, 520 U.S. at 972. In light of the plain language of the
16  signed Notices, the Court find Plaintiff unpersuasive on this point.

17              B.      TILA Cause of Action– Disclosure of Negative Amortization

18  Second, Plaintiff alleges that the loan's Truth in Lending Act Disclosure statement failed to
19  reveal that the loan would negatively amortize, also in contravention of TILA. Mot. at 6. He adds
20  that "no other disclosures in the loan documentation make it clear that Negative Amortization will
21  occur," and claims that the Note misleadingly states that the Interest Rate "has the possibility of
22  increasing," when really "it is assured that this rate will increase." Id. at 6-7.

23  Plaintiff's complaint cites to 12 C.F.R. § 226.19 in support of the argument that "the Truth in
24  Lending Disclosure Statement must include specific explanations of . . . negative amortization."
25  Complaint at 7. While 12 C.F.R. § 226.19(b) does require disclosures for certain variable rate
26  transactions, it states only that such disclosures "must be provided at the time an application form is
27  provided or before the consumer pays a non-refundable fee, whichever is earlier." It does not
28  require such disclosures to be made in the Truth in Lending Disclosure Statement itself. Plaintiff

4

also cites in support of this assertion "Federal Reserve Board Official Staff Commentary, [Regulation Z; Docket No. R-08631] Monday, April 3, 1995." This document states no such requirement.

More importantly, as Defendant reasons, the loan documents did disclose that the loan would negatively amortize. The Truth in Lending Disclosure Statement states: "This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier." Opp. at 3; Complaint Ex. C. The Adjustable Rate Mortgage Loan Disclosure Statement, signed by Plaintiff, states in part:

> Increase in Principal Balance (Negative Amortization): The principal balance on your loan can increase even though you are making the required monthly payments. This is called "Negative Amortization." This can happen as described in this section. If the Initial Interest Rate, which is used to established [sic] the initial monthly payment, is lower than the Subsequent Interest Rate, which applies commencing on the first day of the month immediately following the month in which your loan closes, the initial monthly payment will be insufficient to pay the interest that is accruing during the Subsequent Interest Rate period. Additionally, following the end of the Subsequent Interest Rate period, your interest rate will become an equitable rate that may change monthly.

Hood Decl. Ex. B at ¶ f. Plaintiff does not allege that he did not receive this document "at the time an application form is provided or before the consumer pays a non-refundable fee." See 12 C.F.R. § 226.19(b). In addition, the Adjustable Rate Note states in part:

> Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization: Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion . . . of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments.

Complaint Ex. A at ¶ 4(G).

Based on the foregoing, Plaintiff has not demonstrated that the loan papers failed to disclose the loan's negative amortization potential; indeed, Plaintiff cites to no cases in which similar disclosures have been found inadequate. In addition, that the Note states that the interest rate may (not will) adjust is accurate. The Note specifically explains: "I will pay interest at a yearly rate of 1.000% until June 30, 2006 . . . Commencing July 1, 2006, I will pay interest at a yearly rate . . . of 7.122% . . . Thereafter the interest rate I will pay may change in accordance with Section 4 of this Note." Complaint Ex. A at ¶ 2. Section 4 explains that the interest rate may adjust by taking a current specified index and adding percentage points; it "may adjust" because the index rate plus percentage points might not change the rate, or might lower it. See id. at ¶ 4(B)-(C).

5

Because Plaintiff has failed to identify a TILA violation as to either the Notice of Right to Cancel or the disclosure of negative amortization, he has failed to demonstrate a right to rescind the loan within three years, instead of the standard three days.  The Court need not reach the issue of tender; because there was no TILA violation, Plaintiff cannot rescind.

### D. UCL Cause of Action

Plaintiff alleges that Defendant AHMSI violated the UCL because (1) "Defendant ABC advertised its loans as low interest loans with the intent to mislead . . . Defendant AHMSI was aware that the loans which it was purchasing and servicing contained a misleading clause . . . and that Defendant ABC was misleading . . . consumers;" (2) Defendant ABC failed to provide two complete copies of the Notice of Right to Cancel in violation of TILA; and (3) Defendant ABC provided Plaintiff with a negatively amortizing loan without disclosing that feature in violation of TILA.  Complaint at ¶¶ 22-24.

The two alleged TILA violations do not form a viable basis for a UCL claim; as they lack factual support.[2]  For the same reason, the allegation that Defendant AHMSI was aware that the loans contained a misleading clause also lacks factual support– Plaintiff has not pointed to a misleading clause.  Plaintiff's allegation that Defendant ABC advertised its loans misleadingly is a more viable basis for a UCL claim, but it is still not clear how Defendant AHMSI– who only purchased the loan once Plaintiff had already entered into it– is liable for such advertising.  There is no vicarious liability under the UCL.  Emery v. Visa Internat. Service Ass'n, 95 Cal. App. 4th 952, 960 (Cal. Ct. App. 2002).  Plaintiff responds that he does "not base Defendant's liability on vicarious liability, but rather on Defendant AHMSI's actions in aiding and abetting the violations."  Reply at 9.

While aiding and abetting would be a proper way to plead liability under the UCL, the complaint does not support Plaintiff's argument.  The complaint alleges that Defendant AHMSI "was aware . . . that Defendant ABC was misleading such consumers."  Complaint at ¶ 22.  Aiding and abetting requires not only knowledge, but "substantial assistance of encouragement" of

---

[2] Defendant further agues that the UCL is preempted by TILA "where the sole basis of a UCL claim is a TILA violation."  Opp. at 7  Again, the Court need not reach this argument, as there is no TILA violation.

6

another's tort.  See Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325 (N.D. Cal. 2008).  Plaintiff has not alleged that AHMSI provided any assistance to, or encouragement of, ABC's allegedly false advertising.  The complaint also fails to explain what ABC's misleading advertising consisted of, alleging only that the broker represented the loan as "exceptionally good" and never mentioned it had the ability to recast.  Complaint at ¶ 10.  While Plaintiff has possibly pled enough to survive a motion to dismiss, see Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008), he has not shown that he is likely to succeed on the merits or has raised serious questions under the UCL.

### E. Preliminary/Permanent Injunction Cause of Action

This cause of action turns on the validity of Plaintiff's other claims.  Because none of Plaintiff's other causes of action either show a likelihood of success or raise serious questions, relief cannot be based on this cause of action.

## CONCLUSION

The Ninth Circuit has created a "sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."  See Taylor, 488 F.3d at 1200.  While Plaintiff faces significant and irreparable harm in the foreclosure of his home, he has not demonstrated a likelihood of success on the merits.  Plaintiff has not carried his burden of persuasion by a clear showing, and so the motion for a preliminary injunction is DENIED.

**IT IS SO ORDERED.**

Dated: August 21, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE